UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TYLER B. GOODWIN,
        Plaintiff,

v.                                                                CIVIL ACTION NO. 16-10305-GAO

KIMBERLY JONES, ET AL.,
        Defendants.

MEMORANDUM AND ORDER

O'TOOLE, U.S.D.J.

## I. Introduction

On February 16, 2016, plaintiff Tyler B. Goodwin ("Goodwin"), a prisoner in custody at MCI Concord, filed a self-prepared civil rights complaint against a number of defendants including the Marshfield Police Department and its detective, the Plymouth District Attorney's Office and one of its criminal prosecutors, and purported victims/witnesses. The matter stems from Goodwin's criminal prosecution in Plymouth County for rape. After a jury trial, Goodwin was found to be not guilty. Among other things, Goodwin alleges in his complaint that the defendant police investigator and the Assistant District Attorney failed to investigate DNA evidence in connection with the rape, and, once it was discovered that the DNA evidence did not belong to him, the Assistant District Attorney continued to prosecute him. He also alleges the victims/witnesses made various false statements in connection with his criminal prosecution. He seeks monetary relief and an order prohibiting the defendants from retaliating against him.

On March 16, 2016, this Court issued a Procedural Order (Docket No. 6) directing Goodwin to pay the $350.00 filing fee and the $50.00 administrative fee by April 6, 2016, or in the alternative, file a Motion for Leave to Proceed *in forma pauperis* along with his certified prison account statement. On March 25, 2016, Goodwin submitted an *in forma pauperis* motion (Docket No. 8) with his prison account statement as directed.

On April 18, 2016, Goodwin filed a Motion to Appoint Counsel (Docket No. 9) on the grounds that he is unable to afford to pay for an attorney and that he suffers from a learning disability and has difficulties in understanding the law.

**II.     Discussion**

    A.     The Motion for Leave to Proceed *In Forma Pauperis*

Upon review of Goodwin's financial affidavit and prison account statement, this Court finds that he lacks funds to pay the filing and administrative fees for this action. Nevertheless, because he is a prisoner, he is obligated to pay the filing fee in installments pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915 (the *in forma pauperis* statute).

Accordingly, Goodwin's Motion for Leave to Proceed *in forma pauperis* (Docket No. 8) is ALLOWED, and he is Ordered to pay an initial partial filing fee of $1.69, pursuant to 28 U.S.C. § 1915(b)(1)(B); and the remainder of the fee $348.31 is to be assessed and collected in accordance with 28 U.S.C. § 1915(b)(2).

A copy of this Memorandum and Order shall be sent to the Treasurer's Office at MCI Concord to facilitate payments to this Court.

    B.     The Complaint is Subject to Preliminary Screening

Because Goodwin is a prisoner, the PLRA comes into play. The PLRA contains several provisions which grant this Court the authority to screen and dismiss prisoner complaints. See 28 U.S.C. § 1915 (proceedings *in forma pauperis)*; 28 U.S.C. § 1915A (screening of suits against governmental officers and entities). Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii). Section 1915A also authorizes the Court to review prisoner complaints in civil actions in which a prisoner seeks

redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A.

In connection with this preliminary screening, Goodwin's *pro se* complaint is construed generously. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000). Even under a broad reading, however, Goodwin's claims are subject to dismissal for the reasons set forth below.

  C. Claims Against Assistant District Attorny Jessica Elumba Are Not Cognizable

Goodwin's claims that Assistant District Attorney Jessica Elumba ("ADA Elumba") failed to investigate the DNA evidence and continued to prosecute him even though the DNA evidence exonerated him. Based on reasonable inferences from the complaint, the claims against ADA Elumbra are barred because prosecutors " are entitled to absolute immunity when they engage in activities that are 'intimately associated with the judicial phase of the criminal process.'" Imbler v. Pachtman, 424 U.S. 409, 430 (1976)[1]; Reid v. State of New Hampshire, 56 F.3d 332, 337 (1st Cir. 1995). Conduct falling within this category is not limited to conduct occurring in the courtroom. It includes actions where prosecutors are acting "in the course of [their] role as an advocate for the State," including "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial . . . ." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). "Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." Id. It may include obtaining

---

[1] In Imbler, the plaintiff brought a civil rights action against the prosecutor on the grounds that he allowed a witness to give false testimony that let to the plaintiff's indictment. Id. at 421. The Supreme Court held that the state prosecutor was entitled to absolute immunity for initiation and pursuit of all stages of the prosecution. Id.

evidence for the initiation of criminal process. Imbler, 424 U.S. at 431 n.33. Moreover, "[a]bsolute immunity is not defeated by a showing that the prosecutor acted wrongfully or even maliciously, so long as the prosecutor is exercising quasi-judicial power and not merely operating in an investigatory or administrative role." Easton v. Gianetti, 1997 WL 220312 (N.D. Cal. 1997) (citing Imbler, 424 U.S. at 427 and n.27). On the other hand, prosecutors are entitled only to qualified immunity when they perform investigatory or administrative functions, or are essentially functioning as police officers or detectives. Buckley, 509 U.S. at 273-274.

The distinction between the roles of "prosecutor" and "investigator" is not always clear. Imbler, 424 U.S. at 431 n.33. At some point, a prosecutor stops functioning as an officer of the court and loses absolute immunity, but this determination must be made on a case-by-case or function-by-function basis. To determine whether an action is "prosecutorial" (and thus entitled to absolute immunity), the United States Supreme Court has adopted a "'functional approach,' which looks to 'the nature of the function performed, not the identity of the actor who performed it.'" Buckley, 509 U.S. at 269 (quoting Burns v. Reed, 500 U.S. 478, 486 (1991)). If the nature of the function requires legal knowledge and the related exercise of discretion in whether and how to use the material (*e.g.*, advocacy inside the courtroom or "quasi-judicial" activities related to the preparation for advocacy after criminal proceedings have begun), then absolute immunity is available. See Van de Kamp v. Goldstein, 129 S.Ct. 855, 861-862 (2009).[2]

---

[2]Applying these principles, prosecutors have been granted absolute immunity for appearing before a judge and presenting evidence in support of a search warrant, Burns, 500 U.S. at 492, for their conduct before grand juries, see Lucien v. Preiner, 967 F.2d 1166, 1167 (7th Cir. 1992), cert. denied, 506 U.S. 893 (1992), for the knowing use of false testimony and the deliberate suppression of exculpatory evidence at trial, Imbler, 424 U.S. at 431 & n.34, for preparing and filing a motion for an arrest warrant, Kalina v. Fletcher, 522 U.S. 118, 129 (1997), and for failing to investigate adequately prior to filing charges, failing to turn over exculpatory material to the defense, and gathering additional information during the pendency of criminal proceedings, Broam v. Bogan, 320 F.3d 1023, 1031-33 (9th Cir. 2003). By contrast, prosecutors receive only qualified immunity for giving legal advice to the police, Burns, 500 U.S. at 496, for investigating physical evidence at a crime scene, Buckley, 509 U.S. at 274-75 (involving a bootprint left at the scene of a crime), for holding a press conference, id. at 276-78, for acting as a complaining witness in support of a warrant application, Kalina, 522 U.S. at 130-31, and for authorizing a warrantless wiretap in the interest of national security. Mitchell v. Forsyth, 472 U.S. 511, 520 (1985).

In this case, ADA Elumba's decision to prosecute Goodwin (presumably based on the victims/witnesses statements notwithstanding the lack of DNA evidence incriminating him) clearly falls within the purview of the absolute prosecutorial immunity doctrine. Moreover, Goodwin's amorphous allegation that ADA Elumba violated his civil rights in failing to investigate the DNA evidence does not set forth any underlying facts from which it could be inferred that she acted in a purely investigatory role rather than in a prosecutorial role with respect to the use DNA evidence. Thus, all of Goodwin's claims against ADA Elumba are subject to dismissal in their entirety.

D.   The Claims Against Detective Kimberly Jones Are Not Cognizable

Next, Goodwin asserts liability against detective Kimberly Jones for failing to investigate properly the DNA evidence and determine to whom the DNA evidence pointed. Based on this sole allegation, his claims are not cognizable because "the failure of police officers to conduct an adequate investigation is not sufficient to state a civil rights claim under Section 1983 'unless there was another recognized constitutional right involved.'" Williams v. City of Boston, 771 F. Supp. 2d 190, 200 (D. Mass. 2011) (Saris, C.J.) quoting Gomez v. Whitney, 757 F.2d 1005, 1006 (9th Cir.1985) and citing Maness v. D.L. Runnels, 2009 WL 1155670, at *4 (E.D. Cal. 2009) ("To the extent petitioner believes police officers did not adequately investigate [his crime], petitioner fails to state a claim upon which relief can be granted because he has no constitutional right to a police investigation, adequate or otherwise."). [3] See Hurn v. Perry, 2012 WL 6642534 (E.M. Mich. Nov. 20, 2012) (Report and Recommendation to deny petition for writ of habeas corpus because petitioner's contention that police failed to fully investigate fingerprint evidence on the gun and failed to perform other tests, provided no basis for relief since "'*Brady* . . . does

---

[3]In Williams, an arrestee brought a civil rights action against the police officer and others arising out of an arrest, prosecution, and conviction for an alleged stabbing which he claimed he did not commit. Plaintiff alleged the police officer conducted an investigation in the building in which the stabbing occurred, but questioned the victim and witness outside of plaintiff's presence, failed to bring the alleged victim to him to identify him as the assailant, and fabricated a description of the incident in his police report. This claim for failure to adequately investigate was dismissed upon a motion to dismiss. Id. at *200.

5

not require the government to create exculpatory material that does not exist . . . and the government in a criminal prosecution 'do[es] not have a constitutional duty to perform any particular test . . . [and] once the police have sufficient evidence to establish probable cause, they may arrest and proceed against a suspect without conducting a further investigation for exculpatory evidence which may have exonerated the suspect.") (citations omitted) report and recommendation adopted, 2012 WL 6642801 (E.D. Mich. Dec. 20, 2012).

In light of this, all claims against Kimberly Jones are subject to dismissal in their entirety.

E. The Claims Against the Marshfield Police Department Are Not Cognizable

Goodwin's civil rights claims against the Marshfield Police Department ("MPD") are not cognizable because the MPD is not a suable entity. Here, the MPD is an agency of the Town of Marshfield; it is a non-person and consequently is not subject to suit. See Cronin v. Town of Amesbury, 895 F. Supp. 375 (D. Mass. 1995) (granting summary judgment in favor of town police department as not a proper defendant in a §1983 action). One reason for finding that a police department is not a suable entity is because if the police department is found liable, "it is the city [or town] which will pay; the result is the same as suing the city." Henschel v. Worcester Police Dep't, Worcester, Mass., 445 F.2d 624, 624 (1st Cir.1971) (brackets added). See Aldrich v. Town of Milton, 881 F. Supp. 2d 158, 165 (D. Mass. 2012); Douglas v. Boston Police Dep't, 2010 WL 2719970 (D. Mass. 2010) (dismissing suit against a municipal police department because department "has no legal existence or liability to suit separate from the [municipality]"). "Like a municipality, a police department 'cannot be held liable in damages under § 1983 merely because it employs a tortfeasor.'" Boyle v. Barnstable Police Dept., 818 F. Supp. 2d 284, 300 (D. Mass. 2011) quoting Malachowski v. City of Keene, 787 F.2d 704, 711 (1st Cir.1986); accord Lumpkin v. Lucey, 2010 WL 1794400, *2 (D. Mass. 2010) ("a municipal police department is not subject to suit under Section 1983"). See Dwan v. City of Boston, 329

F.3d 275 (1st Cir. 2003).[4]

Accordingly, Goodwin's claims against the Marshfield Police Department are subject to dismissal in there entirety.

F. The Claims Against the Plymouth District Attorney's Office Are Not Cognizable

Goodwin next names the Plymouth District Attorney's Office as a defendant, presumably because it was the employer of ADA Elumba. These civil rights claims are not cognizable because they are based on a theory of *respondeat liability*, and such theory is not applicable to civil rights claims under 42 U.S.C. § 1983. "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under Section 1983. Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)).

Moreover, the claims against the Plymouth District Attorney's Office also are not plausible because, as an agency of the Commonwealth of Massachusetts, it is entitled to Eleventh Amendment Sovereign Immunity. "The Eleventh Amendment bars actions in federal courts claiming damages against a state and its agencies unless the state has consented to be sued in federal court." Boulais v. Commonwealth of Mass., 2002 WL 225936 at *1 (D. Mass. 2002) (citations omitted). See Alabama v. Pugh, 438 U.S. 781 (1978) (*per curiam*) (11th Amendment generally is recognized as a bar to suits against a State, its departments, and agencies unless the State has consented to suit); cf. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (neither state nor its officials are "persons" for purposes of § 1983); Quern v. Jordan, 440 U.S.

---

[4]"A municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Bordanaro v. McLeod, 871 F.2d 1151, 1155 (1st Cir. 1989) citing Monell v. New York City Dep't of Social Services, 436 U.S. 658 (discussing in what circumstances a municipality could be held liable under § 1983). See Henriquez v. City of Lawrence, 2015 WL 3913449, *2 (D. Mass. June 25, 2015) (Talwani, J.) ("To establish municipal liability under § 1983, a plaintiff must demonstrate that 'the municipality *itself* causes the constitutional violation at issue. *Respondeat Superior* or vicarious liability will not attach under § 1983'") (emphasis in original) citing City of Canton v. Harris, 489 U.S. 378, 385 (1989).

7

332, 344 (1979) (Congress did not override state's Eleventh Amendment immunity in enacting §1983). Here, nothing in Goodwin's complaint could be reasonably construed as presenting claims as to which the Commonwealth of Massachusetts has waived its sovereign immunity to suit in federal court.

Accordingly, Goodwin's claims against the Plymouth District Attorney's Office are subject to dismissal in their entirety.

      G.     <u>The Claims Under 42 U.S.C. § 1985 Are Not Cognizable</u>

Goodwin has asserted violations of 42 U.S.C. § 1985, although he simply cites to the statute and does not set forth how each defendant has violated this statute. Moreover, he fails to state what subsection is applicable to this case. Section 1985 "proscribes certain enumerated conspiracies" and confers a private right of action upon individuals injured by such conspiracies. <u>See</u> <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996). Section 1985(1) prohibits a conspiracy by two or more persons to prevent, through force, intimidation, or threat, any officer of the United States from performing his or her duties. 42 U.S.C. § 1985(1). Section 1985(2) prohibits a conspiracy by two or more persons to obstruct justice by force, intimidation or threats, any party or witness in any federal court. 42 U.S.C. § 1985(2). Section 1985(3) prohibits a conspiracy by two or more persons to deprive persons of rights or privileges. 42 U.S.C. § 1985(3).

Subsections 1985(1) and (2) do not appear to be applicable to this case because there is no allegation of a conspiracy to prevent a federal official from performing his duties, nor is there any allegation of a conspiracy to obstruct justice by force, intimidation or threat to any party or witness in federal court. Thus, the Court presumes that Darsch's claims are intended to fall under § 1985(3), conspiracy to deprive a person of rights or privileges. To state a cause of action arising under § 1985(3), however, a plaintiff must allege the existence of a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, by an overt act in furtherance of the conspiracy that causes an injury or deprivation of a constitutionally protected right or

8

privilege. Aulson, 83 F.3d at 3; see Petricca v. City of Gardner, 429 F. Supp. 2d 216, 222-23 (D. Mass. 2006). Additionally, a claim of conspiracy must allege specific facts that suggest a conspiracy or agreement; conclusory statements that the defendants conspired are insufficient to meet the pleading standard. See Hudson v. MacEachern, No. 13-12395-LTS, 2015 WL 1442547, at *6 (D. Mass. Mar. 31, 2015). Here, Goodwin has not set forth any factual allegations supporting a conspiracy between two or more persons. Moreover, there is a total absence of any factual allegations suggesting the requisite class-based animus to deprive equal protection of the laws, as required to state a plausible § 1985 claim.

Accordingly, all of Goodwin's § 1985 claims are subject to dismissal in their entirety.

H. The Claims Under 18 U.S.C. §§ 241 and 242 Are Not Cognizable

Next, Goodwin asserts claims under federal criminal statutes, 18 U.S.C. §§ 241 and 242. Again, he simply cites to these statutes but does not set forth any factual allegations delineating the defendant(s) who have violated them. In any event, Goodwin's claims are not cognizable because these federal criminal statutes (involving conspiracy and deprivation of civil rights) do not confer a private right of action. See Bailey v. Bureau of Prisons, 2015 WL 5694120 (D.D.C. Sept. 28, 2015) (18 U.S.C. §§ 241, 242 and others do not confer a private right of action) citing Abou–Hussein v. Gates, 2010 WL 2574084, at *1 (D.C. Cir. 2010) (*per curiam*) (affirming dismissal because 18 U.S.C. §§ 241 and 1001 "are criminal statutes that do not expressly create a private right of action"); Keyter v. Bush, 2005 WL 375623, at *1 (D.C. Cir. 2005) (*per curiam*) (affirming dismissal because 18 U.S.C. §§ 241, and 242, as criminal statutes, do not convey a private right of action), cert. denied, 546 U.S. 875 (2005) (other citations omitted).

Thus, Goodwin may not obtain any relief under 18 U.S.C. §§ 241 and 242 and these claims are subject to dismissal in their entirety.

I. The Claims Under the Massachusetts Civil Rights Act Are Not Cognizable

Goodwin also asserts claims under the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, § 11I, the state analog to 42 U.S.C. § 1983. See Martino v. Hogan, 37 Mass.

9

App. Ct. 710, 720-21 (1994). To state a claim under the MCRA, a plaintiff must allege facts plausibly suggesting that his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth of Massachusetts have been interfered with, or attempted to be interfered with, and that the interference or attempted interference was by "threats, intimidation or coercion." Swanset Development Corp. v. Tauton, 423 Mass. 390, 395 (1996). The Massachusetts Supreme Judicial Court has held that the MCRA was not intended to create a "vast constitutional tort," noting that "the legislature has explicitly limited this remedy to situations where the deprivation of secured rights occurs by 'threats, intimidation or coercion.'" Bell v. Mazza, 394 Mass. 176, 182 (1985). Here, Goodwin has not alleged any facts or circumstances plausibly suggesting that threats, intimidation, or coercion existed in connection with the alleged wrongdoings by any of the defendants. Thus, his claims under the MCRA are subject to dismissal.

      J.      The Claims Against Private Citizens Are Not Cognizable

In order to state a §1983 claim, a plaintiff must allege: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 998 (1st Cir. 1992). Here, Goodwin alleges that the defendant Stacy Damon (the purported victim) gave false evidence of sexual assault that led to his false arrest and prosecution. Similarly, he claims that defendant Rebecca Lanoue also gave made false statements that he had sexually assaulted her, but later she recanted her statements. Further, Goodwin claims that defendant John Patterson also made false statements by telling both purported victims that Goodwin was HIV positive, and this has slandered him.

Goodwin fails to provide any facts to describe these defendants; however, the Court reasonably infers that these three defendants are private individuals who are not state actors. Thus, even if Goodwin alleges that these defendants conspired to violate his constitutional rights,

his § 1983 claims are not cognizable. See Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003) ("A plaintiff may not proceed under § 1983 against a private party 'no matter how discriminatory or wrongful' the party's conduct." (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)). See also Moldowan v. City of Warren, 578 F.3d 351, 399 (6th Cir. 2009) ("Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken 'under color of law'" citing Brisco v. LaHue, 460 U.S. 325, 329 (1983)). In light of this, the Court need not address the issue whether absolute victim witness immunity for trial testimony would serve as a bar to a civil action against these defendants fro trial testimony. See Moldowan, 578 F.3d at 373 (discussing public policy of victim witness immunity doctrine).

        K.       Declination to Exercise Supplemental Jurisdiction

For all the reasons set forth above, all of Goodwin's federal claims, and his MCRA claim, are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and/or (iii) and §1915A. Apart from referencing that defendant Patterson slandered him, Goodwin has not set forth sufficiently any other state law claims against the defendants. Thus, in the event plaintiff's federal claims ultimately are dismissed for the reasons stated herein, this Court would decline to exercise jurisdiction over any pending state-law claims against the defendants, to the extent there are any. Under 28 U.S.C. § 1367, a "district court may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.
§ 1367(c)(3). See Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims.").

        L.       The Motion to Appoint Counsel

Under 28 U.S.C. § 1915(e)(1), the court "may request an attorney to represent any person

unable to afford counsel." 28 U.S.C. § 1915(e)(1). A civil plaintiff, however, lacks a constitutional right to free counsel. DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991). In order to qualify for appointment of counsel, a party must be indigent and exceptional circumstances must exist such that denial of counsel will result in fundamental unfairness impinging on the party's due process rights. Id. To determine whether exceptional circumstances sufficient to warrant the appointment of counsel are present in a case, the court must examine the total situation, focusing on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent him or herself. Id. at 24.

In view of the various legal impediments discussed herein, this Court cannot find that exceptional circumstances exist that would warrant appointment of counsel in this case. While Goodwin alleges he has difficulties in proceeding with this action due to his learning disability, this factor is not persuasive under the circumstances. Moreover, the facts that he is indigent, unskilled in the law, and lacking in legal knowledge do not present unique circumstances in prisoner litigation. Here, the Court must balance the apparent merits of his claims with the expenditure of scarce *pro bono* resources. On the balance, use of such resources is not justifiable.

Accordingly, Goodwin's Motion for Appointment of Counsel (Docket No. 9) is DENIED.

M.    Order to Show Cause

In light of all of the above, this action will be dismissed within 42 days of the date of this Memorandum and Order unless Goodwin files a written a "Show Cause Response" demonstrating good cause why this action should not be dismissed based on the various legal impediments discussed herein. Goodwin shall not reiterate his factual allegations; rather he must address, with supporting facts or law, the various impediments including the bar of absolute prosecutorial immunity, the lack of a constitutional right to an adequate police investigation, the lack of *respondeat superior* liability, the bar of Eleventh Amendment sovereign immunity, the lack of liability of a police department, the lack of state action of private defendants as a bar to

claims under § 1983, the failure to state plausible claims under § 1983 and the MCRA, and the lack of a private right of action for violations of criminal statutes.

Failure to comply with the directives contained in this Memorandum and Order may result in a dismissal of this action and may constitute a strike pursuant to 28 U.S.C. § 1915(g).

No summonses shall issue pending further Order of the Court.

## III. Conclusion

Based on the foregoing, it is hereby Ordered that:

1. Plaintiff's Motion for Leave to Proceed *in forma pauperis* is <u>ALLOWED</u> and the filing fee is assessed pursuant to 28 U.S.C. § 1915(b);

2. Plaintiff's Motion to Appoint Counsel (Docket No. 9) is <u>DENIED</u>; and

3. Within 42 days of the date of this Memorandum and Order plaintiff shall demonstrate good cause in writing why this action should not be dismissed for the various reasons stated herein.

SO ORDERED.

                /s/ George A. O'Toole, Jr.
                GEORGE A. O'TOOLE, JR.
                UNITED STATES DISTRICT JUDGE

DATED: June 27, 2016